UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
E. ARMATA, INC., FOODNATION, INC. and
G AND P WAREHOUSE INTERNATIONAL
LLC t/a FOODNATION PRODUCE
DISTRIBUTORS,

                        **Plaintiffs,**

       -against-

SHOKON INC., BIG B FOODS INC., BIG B
FOODS RETAIL INC., JASKAWAL SINGH
and SHINEY EAPEN a/k/a SHINEY
DANIEL,

                      **Defendants.**
-----------------------------------------------------------------x

                 **REPORT AND
RECOMMENDATION**

                 **18-CV-6573 (DLI)**

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

     Plaintiffs E. Armata, Inc. ("Armata"), FoodNation, Inc. ("FoodNation"), and G and P Warehouse International LLC t/a FoodNation Produce Distributors ("FoodNation Produce") (collectively "plaintiffs") bring this suit for alleged violations of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.* ("PACA"), and for common law breach of contract.  See Complaint (Nov. 19, 2018) ("Compl.") ¶¶ 1, 11, Electronic Case Filing ("ECF") Docket Entry ("DE") #1.  Plaintiffs commenced this action on November 19, 2018, against Shokon Inc., Big B Foods Inc., Big B Foods Retail Inc. (together, the "corporate defendants"), along with Jaskawal Singh ("Singh") and Shiney Eapen a/k/a Shiney Daniel ("Eapen") (collectively, with the corporate defendants, "defendants").  See id. ¶¶ 6-10. Currently pending before this Court, on a referral from the Honorable Dora L. Irizarry, is plaintiffs' motion for default judgment.  See Motion for Default Judgment (Jan. 8, 2019) ("Pl. Mot."), DE #13; Order Referring Motion (Jan. 9, 2019) ("Referral").

For the reasons that follow, this Court respectfully recommends that the District Court deny plaintiffs' default judgment motion, dismiss FoodNation's claims for lack of subject matter jurisdiction, and dismiss plaintiffs' remaining claims without prejudice.

## BACKGROUND

Plaintiff Armata is a New York corporation located in the Bronx.   See Compl. ¶ 3. Plaintiffs FoodNation and FoodNation Produce are New York corporations located in Ridgewood.   Id. ¶¶ 4, 5.   Plaintiffs Armata and FoodNation Produce, as licensed PACA dealers, buy and sell produce, id. ¶¶ 3, 5, whereas plaintiff FoodNation buys and sells meat and meat products, id. ¶ 4, and is therefore not a PACA dealer.

The corporate defendants are described as New York corporations located in Woodside or New Hyde Park, New York, that "engage[ ] in the business of buying wholesale quantities of meat and produce in interstate commerce, and [who were] at all relevant times subject to licensure under the provisions of PACA."   Id. ¶¶ 6-8.   Defendants Singh and Eapen are "officer[s], director[s] and/or owner[s] of [the corporate defendants]" and "controlled the operations of [the corporate defendants] and [were] in a position of control over the PACA trust assets belonging to Plaintiffs."   Id. ¶¶ 9, 10.

Between July 19, 2018 and September 21, 2018, plaintiffs Armata and FoodNation Produce sold $30,441.25 worth of produce to defendants, and plaintiff FoodNation sold defendants $11,681.67 in meat and meat products.   See id. ¶¶ 12, 13.   The Complaint alleges that defendants accepted the delivery of produce and meat, but failed to pay for the goods when payment became due, despite repeated demands from plaintiffs.   See id. ¶ 14.

2

Plaintiffs bring this action alleging eight causes of action.   The Complaint alleges (1) failure to pay trust funds in the amount of $30,441.25, in violation of PACA and PACA regulations, for which plaintiffs Armata and FoodNation Produce seek injunctive relief against all defendants, see Compl. ¶¶ 19, 20; (2) failure to promptly tender "full payment" for produce received, in violation of PACA, for which plaintiffs Armata and FoodNation Produce seek damages, plus interest, costs, and attorney's fees, see id. ¶¶ 22-25; (3) unlawful dissipation of trust assets by a corporate official, as against defendant Singh, see id. ¶¶ 27-30; (4) unlawful dissipation of trust assets by a corporate official, as against defendant Eapen, see id. ¶¶ 32-35; (5) failure to pay for goods received by defendants, for which plaintiffs seek damages, plus interest, costs, and attorney's fees, see id. ¶¶ 37-38; (6) breach of contract as against the corporate defendants and individual defendant Singh, see id. ¶¶ 40-48; (7) failure to maintain the corporate formalities, under an alter ego theory against the corporate defendants, see id. ¶¶ 50-62; and (8) plaintiffs' demand for pre-judgment interest and attorney's fees, see id. ¶¶ 64, 65.

After defendants failed to answer or otherwise appear in this action, plaintiffs moved for entry of default, see Request for Certificate of Default (Dec. 28, 2018), DE #10, and the Clerk of Court noted defendants' default on January 7, 2019.   See Entry of Default, DE #12. Plaintiffs thereafter filed the instant motion for default judgment.   See Pl. Mot.

Following the referral of the motion to the undersigned magistrate judge, see Referral, this Court directed plaintiffs to further supplement their submissions and to serve copies of those submissions on defendants, see Scheduling Order (Jan. 22, 2019), DE #17.

3

Specifically, this Court requested "an affidavit from a person with knowledge addressing: . . . whether any of the corporate defendants falls within the statutory retail exclusion, which exempts from PACA coverage any person buying produce solely for sale at retail unless 'the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000[.]'" Id. at 2 (quoting 7 U.S.C. § 499a(b)(6)). Plaintiffs were also directed to supplement their submissions as to their alter ego claim; as to whether the Court had subject matter jurisdiction over the non-PACA claims brought by FoodNation; and as to whether process was effectively served on individual defendant Eapen. Id. In the same Scheduling Order, defendants were given until February 19, 2019, to respond to plaintiffs' motion for default judgment. Id. at 3. Plaintiffs supplemented their submissions on January 24, 2019 and January 29, 2019. See DE #19, #20, #21, #23. Defendants failed to answer or otherwise respond to the motion for default judgment.

## DISCUSSION

### I.    Default Judgment Standard

Where the "plaintiff's claim is [not] for a sum certain[,]" the plaintiff seeking default judgment against a defendant who failed to answer or otherwise defend the case "must apply to the court" after "the clerk enter[s] the [defendant's] default." Fed. R. Civ. P. 55(a)-(b). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability[.]" Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). A default does not, however, establish "that the alleged facts constitute a valid cause of action[.]" TAGC Mgmt., LLC v. Lehman, Lee & Xu, Ltd., 536 F.App'x 45, 46

4

(2d Cir. 2013) (internal quotation marks omitted).   Indeed, "before a district court enters a default judgment, it must determine whether the allegations in a complaint establish the defendant's liability as a matter of law."   Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas, 509 F.App'x 54, 56 (2d Cir. 2013) (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)).   To the extent that the plaintiff's allegations are inadequate, "a district court has discretion under Rule 55(b)(2) . . . to require proof of necessary facts" to satisfy itself that there is "a valid cause of action[.]"   Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); accord Finkel, 577 F.3d at 87.[1]

"When deciding a [defendant's liability on a] motion for default judgment, courts have . . . looked to recent precedent with regard to surviving a Rule12(b)(6) motion to dismiss[.]" Chanel, Inc. v. Louis, No. 06-CV-5924 (ARR)(JO), 2009 WL 4639674, *3 (E.D.N.Y. Dec. 7, 2009).   On a Rule 12(b) motion, courts follow a two-prong approach.   See Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009).   First, the complaint's conclusions of law and formulaic recitations of elements of a cause of action should be disregarded.   See id. at 678.   Second, where the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."   Id. at 679.   A "claim has facial plausibility when the plaintiff pleads factual content that allows

---

[1]   Accordingly, in upholding a district court's refusal to vacate a default judgment, the Second Circuit has observed that a finding of liability on default may be based on "the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiffs[.]"   Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 189 (2d Cir. 2015); see id. at 188; Herrera v. Tri-State Kitchen & Bath, Inc., No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *5 n.1 (E.D.N.Y. Mar. 31, 2015).

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). While "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). The Supreme Court has invited courts, in assessing the sufficiency of a pleading, to use their "judicial experience and common sense." Id. at 679.

On a motion for default judgment, the facts alleged in the pleading are not assumed to be true in assessing the plaintiff's right to the relief requested. See Au Bon Pain, 653 F.2d at 65. In other words, even if the defendant is found to be liable, the defendant's default is not considered an admission of the plaintiff's entitlement to an award of damages or requested injunction. See Greyhound Exhibitgroup, 973 F.2d at 158; SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975). Because this Court concludes that plaintiffs have not pled sufficient facts to establish defendants' liability under PACA, this opinion does not address plaintiffs' entitlement to damages or equitable relief.

## II.    Subject Matter Jurisdiction Over FoodNation's Claims

Before turning to the sufficiency of the PACA claims of plaintiffs Armata and FoodNation Produce, the Court addresses whether the Court has subject matter jurisdiction over the non-PACA claims brought by FoodNation, which sold only meat and meat products. See Compl. ¶¶ 12, 13; see also id. ¶ 4; Supplemental Memorandum of Law in Support of Motion for Entry of Final Default Judgment (Jan. 24, 2019) ("Pl. Supp. Mem.") at 6, DE

6

#21.[2]  Plaintiffs argue that this Court has supplemental jurisdiction over FoodNation's claims "pursuant to 28 U.S.C. § 1367 because [those] non-PACA claims form part of the same case or controversy as the [federal] PACA claims[,]" Pl. Supp. Mem. at 5, in that defendants' "purchases of non-produce items from FoodNation form a part of the same transactions on which FoodNation Produce's PACA claims are based[,]" id. at 6.   This Court disagrees.

To be sure, plaintiffs are correct that the starting point in analyzing supplemental jurisdiction is 28 U.S.C. § 1367, which provides in pertinent part that federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   28 U.S.C. § 1367(a).   A state law claim forms part of the same case or controversy where the state and federal claims "derive from a common nucleus of operative fact."   Romero v. Bestcare, Inc., No. CV 15-7397 (JS)(GRB), 2018 WL 1702001, at *8 (E.D.N.Y. Feb. 28, 2018), adopted, 2018 WL 1701948 (E.D.N.Y. Mar. 31, 2018) (internal quotations marks omitted).   In accordance with the final sentence of section 1367(a), supplemental jurisdiction may even extend to claims "that involve the joinder or intervention of additional parties[,]" 18 U.S.C. § 1367(a), including "pendent party plaintiffs," see Romero, 2018 WL 1702001, at *8.

---

[2]  PACA applies to fresh fruits and fresh vegetables, see 7 U.S.C. § 499a(b)(4), not to meat or meat products.

The PACA claims on behalf of Armata and FoodNation Produce are set forth in the first four causes of action in the Complaint.   See generally Compl.   In an apparent transcription error, the heading of the Fourth Cause of Action states that it is brought "by Armata and FoodNation," see id. at p.6, whereas the body of the claim makes clear that the relevant PACA plaintiffs are Armata and FoodNation Produce, see id. ¶¶ 32-35.

Nevertheless, in order for FoodNation to qualify as a pendent party plaintiff under section 1367(a), FoodNation's sales of meat and meat products to defendants must form part of the same controversy as the produce transactions that are the subject of the PACA claims asserted by the other two plaintiffs.   The critical question is not whether plaintiffs' various businesses are interrelated,[3] but rather whether the meat and produce transactions are derived "from a common nucleus of operative fact."   An analysis of the invoices proffered by plaintiffs reveals that they are not.   Not only did FoodNation and FoodNation Produce use separate invoices and invoice numbers for their respective meat and produce sales, but the shipment dates of the various goods are distinct and rarely overlap as between the PACA and non-PACA plaintiffs.   See Ex. L & Ex. N to Declaration of Gregory Brown in Support of Motion for Default Judgment (Jan. 8, 2019) ("Brown Decl."), DE #14-1.   By the same token, the invoice dates and payment due dates of the FoodNation transactions rarely coincide with those of the produce transactions involving the PACA plaintiffs.   See Ex. O to Brown Decl., DE #14-1.

In short, the FoodNation sales involved separate orders and shipments, *not* the "same transactions on which FoodNation Produce's PACA claims are based."   Pl. Supp. Mem. at 6. Contrary to plaintiffs' assumption, the fact that the goods may have been "delivered to the same supermarket[,]" id. at 6, does not make those disparate transactions part of the same case or controversy.   Accordingly, since plaintiffs failed to establish that FoodNation's state law

---

[3]   See Pl. Supp. Mem. at 6 (asserting that FoodNation and FoodNation Produce conduct their operations "as one," with the same employee in charge of collections of both produce and non-produce items).

claims satisfy section 1367(a)'s "same case or controversy" test, this Court recommends that the District Court dismiss FoodNation's state law claims for lack of subject matter jurisdiction. See generally Romero, 2018 WL 1702001, at *8 & n.16.

## III.    Sufficiency of Plaintiffs' PACA Claims

The Court turns next to defendants' liability for Armata and FoodNation Produce's claims under the trust provision of PACA, 7 U.S.C. § 499e(c)(4).    See Compl. ¶¶ 1, 11; see also Memorandum of Law in Support of Motion for Entry of Final Default Judgment (Jan. 8, 2019) ("Pl. Mem.") at 3-4, DE #15.    Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") provides for the dismissal of a complaint where a plaintiff fails "to state a claim upon which relief can be granted[.]"    Fed. R. Civ. P. 12(b)(6).    As explained by the Supreme Court, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."    Iqbal, 556 U.S. at 678 (internal quotations marks omitted).    Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"    Twombly, 550 U.S. at 555 (citation omitted).    In connection with the application of these standards, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."    Iqbal, 556 U.S. at 678.    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."    Id.

In order to state a claim under section 499e(c)(4) of PACA, plaintiffs must allege facts supporting that:

(1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant,

dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law.

A & J Produce Corp. v. Chang, 385 F.Supp.2d 354, 358 (S.D.N.Y. 2005) (citing 7 U.S.C. § 499e) (collecting cases); see G & P Warehouse, Inc. v. Cho's Church Ave Fruit Mkt. Inc., No. 15-CV-6174 (NG)(CLP), 2016 WL 5802747, at *5 (E.D.N.Y. Aug. 12, 2016), adopted, 2016 WL 5716819 (E.D.N.Y. Sept. 30, 2016).   Here, the pleading, together with the uncontroverted evidence presented, see generally supra p. 5 n.1, does not allege sufficient facts to plausibly support defendants' liability under PACA.

## A.    The Corporate Defendants

The fatal flaw in plaintiffs' PACA claims is their failure to allege facts concerning the status of the corporate defendants sufficient to satisfy the second PACA element.   In moving for default judgment, plaintiffs contend that the corporate defendants are subject to PACA as "dealers."   See Pl. Mem. at 5-6.   Conspicuously absent from the Complaint is any allegation that the corporate defendants were PACA "dealers"; instead, the pleading alleges, in conclusory and ambiguous fashion, that the corporate defendants were "at all relevant times subject to licensure under the provisions of PACA."   Compl. ¶¶ 6-8.   Yet plaintiffs concede in their motion papers that the corporate defendants were not licensed PACA dealers.   See Pl. Mem. at 5.   The Complaint therefore fails to allege any nonconclusory facts concerning defendants' status so as to bring them within the ambit of PACA.   Nor do plaintiffs' motion papers cure this deficiency.

10

"[T]he applicability of PACA as against a particular purchaser depends not only on whether the goods purchased were fruits and vegetables, but whether the purchaser was a 'dealer' for the purposes of PACA."  AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc., No. 06-CV-2142 (GEL), 2007 WL 4302514, at *7 (S.D.N.Y. Dec. 7, 2007) (Lynch, J.).[4]  As Judge Lynch explained in the AFL case:

> To be considered a PACA dealer [defendants] must have met the statutory requirements outlined in § 499a(b)(6).  As a threshold matter, [a defendant] cannot be considered a PACA dealer unless it deals (or dealt) in 'wholesale or jobbing quantities' of produce, id., defined by regulations to be produce totaling one ton or more in weight in any day shipped, received, or contracted to be shipped or received, 7 C.F.R. § 46.2.  Even if [a defendant] dealt in wholesale or jobbing quantities, if it did so 'solely for sale at retail,' th[e]n it cannot be considered a dealer 'until the cost of [its] purchases of perishable agricultural commodities in any calendar year are in excess of $230,000,' 7 U.S.C. § 499a(b)(6)(B), or until it secured a license pursuant to § 499c.  7 U.S.C. § 499a(b)(6).

2007 WL 4302514, at *7.  Plaintiffs do not dispute that defendants—who were not licensed PACA dealers—were purchasing produce "solely for sale at retail[.]"  Pl. Mem. at 5 (citing 7 U.S.C. § 499a(b)(6)(B)).  Thus, in order to demonstrate that defendants were "dealers" subject to PACA, plaintiffs must show that defendants' purchases of produce satisfied both a daily and annual threshold.

Plaintiffs fail to allege facts to show that defendants were dealers within the meaning of PACA.  Plaintiffs concede in their motion papers that they "cannot establish that Defendants satisfy the $230,000.00 purchase requirement PACA establishes for retail sellers of produce

---

[4]  Although PACA also applies against commission merchants and brokers, see, e.g., 7 U.S.C. § 499e(c)(2), plaintiffs allege only that defendants were dealers, see Pl. Mem. at 5.

solely on their sale to Defendants[.]"  Brown Decl. ¶ 15, DE #14.[5]  They nevertheless ask the Court to overlook this deficiency in light of the default posture of this action.  This Court declines to do so.

Here, plaintiffs allege business dealings with defendants for a mere two-month period—from July 19, 2018 until September 21, 2018—yielding a monthly average of $15,000 in produce-related invoices.  See Compl. ¶ 12; see also Camporese Decl. ¶ 6 ("I have learned through this case that Defendants also purchased at least $14,440.00 worth of produce from E. Armata, Inc. for the period from mid-July through mid-August . . . .  [A]lthough I cannot establish that FoodNation Produce and E. Armata sold more than $230,000.00 worth of produce in a single year to Defendants, it appears that they were purchasing produce at the rate of at least $15,000.00 per month from various sources.").  Even assuming that this Court were willing to credit plaintiffs' speculative extrapolation, a monthly average of $15,000 would yield an annual total of $180,000, significantly less than the $230,000 statutory requirement. Moreover, plaintiffs ignore the fact that defendants had barely been in business for one year when they commenced their short-lived relationship with plaintiffs.  See Ex. K to Brown Decl., DE #14-1 at 51, 53, 55; see also Ex. J to Brown Decl., DE #14-1 at 44.  Plaintiffs proffer no facts to support their assumption that from the time they opened for business, these start-up companies began placing monthly orders for $15,000 in produce—or, for that matter,

---

[5]  The daily threshold was satisfied by the delivery of 2,697 pounds of produce to defendants on August 22, 2018.  See Declaration of Erma Camporese in Support of Motion for Default Judgment (Jan. 24, 2019) ("Camporese Decl.") ¶ 8, DE #19 (citing Ex. L to Brown Decl.).

that defendants continued to operate their businesses after the final order in September 2018.[6]

Therefore, even assuming that defendants ordered produce from other sources over a twelve-month period,[7] plaintiffs have not proffered sufficient facts to plausibly allege that defendants satisfied the $230,000 prerequisite to dealership status under PACA.   See Double Green Produce, Inc. v. Forum Supermarket Inc., No. 18-CV-2660 (MKB)(SJB), 2019 WL 1387538, at *5 (E.D.N.Y. Jan. 29, 2019) (concluding that plaintiff's assertion that the $230,000 threshold had been met was based not on admissible evidence "but on a series of assumptions laden on top of each other, none of which are supported"), adopted, Order (Mar. 27, 2019).[8]

---

[6]   This case bears no resemblance to the facts alleged in Central Produce Corp. v. 32-18 M&M Corp., No. 17-CV-3841 (LDH)(RLM), 2018 WL 4327923, at *5 (E.D.N.Y. July 9, 2018), adopted sub nom. Cent. Produce Corp. v. 34-18 M&M Corp., 2018 WL 4326925 (E.D.N.Y. Sept. 10, 2018), where the defaulting defendants were held to qualify as dealers under PACA.   There, the plaintiff, who was represented by the same counsel as here, alleged more than two years of business dealings—from February 2015 until May 2017—with the defendants, who placed produce orders with the plaintiff totaling more than $230,000, or approximately $100,000 per year, and also ordered produce from other suppliers during the relevant time period.   See id.   The allegations presented in this case do not approach the showing made in Central Produce.

[7]   Plaintiffs' allegations that defendants had other sources of produce in the same year is speculative at best.   For example, plaintiffs allege that defendants did business with "Four Seasons Produce[.]"   See Camporese Decl. ¶ 6; see also Ex. J. to Brown Decl.   The basis for that assertion is in Shokon Inc.'s Credit Application and Agreement, which simply lists Four Seasons Produce under "Trade References," without explanation as to whether that entity and defendants had any active business dealings and, if so, their frequency, temporal scope, or magnitude.

[8]   The court in Double Green Produce concluded that the failure to sufficiently allege defendants' status as dealers was a jurisdictional defect under Rule 12(b)(1) of the FRCP. While this Court views the deficiency as implicating only Rule 12(b)(6), it nevertheless agrees with the conclusion in Double Green that the pleading was inadequate.   See also Jacob's Vill. Farm Corp. v. Yusifov, No. 14-CV-4109 (PKC), 2015 WL 5693706, at *3 n.5 (E.D.N.Y. Sept. 28, 2015) (suggesting that the distinction between dismissal for lack of subject matter

Consequently, this Court respectfully recommends that the District Court dismiss plaintiffs' claims for PACA liability as to the corporate defendants.

**B.    The Individual Defendants**

Finding that plaintiffs have not established liability as to the corporate defendants, the Court turns next to the liability of the individual defendants—Singh and Eapen.

Plaintiffs allege that Singh and Eapen are personally liable for their failure to fulfill their statutory duties in preserving PACA trust assets.    See Compl. ¶¶ 27-30, 32-35; Pl. Mem. at 8-10.    "An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty."    Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705-06 (2d Cir. 2007) (collecting cases).    The failure to preserve the assets in a PACA trust occurs where the person in a position to control such assets acts in a manner "inconsistent with this responsibility," and fails to make such assets "freely available" to the beneficiary of the trust. See id. at 706 (quoting 7 C.F.R. § 46.46(d)(1)).

To establish personal liability, plaintiffs must make a showing that the PACA trust assets are not freely available to satisfy the PACA liability.    See id. at 707.    Here, plaintiffs have failed to establish that the corporate defendants were PACA dealers, and that their transactions with those defendants therefore resulted in the creation of a PACA trust.    As such, this Court respectfully recommends that the District Court dismiss plaintiffs' PACA claims as against the individual defendants.    See Johnston Farms v. Yusufov, No. 17-CV-16,

---

jurisdiction and for failure to state a claim rarely has practical consequences).

2017 WL 6571527, at *3-4 (E.D. Cal. Dec. 26, 2017) ("Plaintiff must then show that the individuals controlled PACA trust assets and that the individuals breached their fiduciary duty to preserve those assets.").

Because plaintiffs have not plausibly alleged the liability of the corporate or individual defendants under PACA, the Court further recommends that the District Court decline to exercise supplemental jurisdiction as to the remaining common law claims.   See Jacob's Vill., 2015 WL 5693706, at *10 (declining to exercise supplemental jurisdiction over state law claims after dismissing PACA claims); Fresh Pick NY Inc. v. Dover Gourmet Corp., No. 12-CV-662 (JFB)(ARL), 2013 WL 4777323, at *5 (E.D.N.Y. Sept. 5, 2013) (Bianco, J.) (declining to exercise supplemental jurisdiction where the court dismissed claims over which it had original jurisdiction).

## CONCLUSION

For the reasons explained above, the Court recommends that plaintiffs' motion for default judgment be denied, that FoodNation's claims be dismissed for lack of subject matter jurisdiction, and that plaintiffs' remaining claims be dismissed without prejudice.

Any objections to the recommendations contained herein must be filed with Chief Judge Irizarry on or before **September 13, 2019**.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

The Clerk of the Court is respectfully requested to docket this opinion into the ECF

court file and to send copies, via Federal Express, to each defendant at the following

addresses:

Shokon Inc.
58-12 Queens Blvd.
Woodside, NY 11377


Big B Foods Inc.
174 Rose Lane
New Hyde Park, NY 11040


Big B Foods Retail Inc.
174 Rose Lane
New Hyde Park, NY 11040


Jaskawal Singh
35 Jones St.
New Hyde Park, NY 11040


Shiney Eapen a/k/a Shiney Daniel
9409 120th St., 2nd Floor
South Richmond Hills, NY 11419


**SO ORDERED.**

**Dated:**      **Brooklyn, New York**
          **August 30, 2019**


/s/  *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**